UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


EDMOND HALL,

     Plaintiff

v.                                    Civil Action No. 2:04-0585

LIBERTY MUTUAL
FIRE INSURANCE COMPANY
and MAX BELLARD

     Defendants


AND


JOSEPH L. WEILAND II,

     Plaintiff

v.                                    Civil Action No. 2:04-0586

LIBERTY MUTUAL
FIRE INSURANCE COMPANY
and MAX BELLARD

     Defendants


<u>MEMORANDUM OPINON AND ORDER</u>


       This matter is before the court on: plaintiffs' motion for partial summary judgment on their <u>Hayseeds</u> claims related to defendant Liberty Mutual's failure to inform them of the

availability of medical payments coverage, filed April 22, 2005;

defendants' motion to dismiss plaintiffs' Hayseeds claims, and

defendants' motion to dismiss Joseph Weiland's claim under W.Va.

Code § 33-11-4(3) and (5), both filed June 29, 2005; and

defendants' motion for summary judgment on plaintiffs' unfair

trade practices claims, defendants' motion for summary judgment

on plaintiffs' Hayseeds claims, and defendants' motion for

summary judgment on Joseph Weiland's claim under W.Va. Code § 33-

11-4(3) and (5), all filed July 5, 2005[1].


I.


Plaintiffs Edmond Hall and Joseph L. Weiland II filed

complaints in the Circuit Court of Kanawha County, West Virginia

on July 31, 2003.  Both cases were removed to this court by

defendants on June 14, 2004, and subsequently consolidated on

September 20, 2004.  The complaints stated causes of action

against defendants for violations of the West Virginia Unfair

Trade Practices Act ("UTPA"), W.Va. Code § 33-11-1 et seq.

_____

[1]     Together, defendants' memoranda in support of these
three summary judgment motions total 45 pages.  Rule 4.01(a) of
the Local Rules of Civil Procedure provides that a motion "shall
be accompanied by a supporting memorandum of not more than 20
pages in length. . ."

2

(Weiland Compl. Count II; Hall Compl. Count II.)  By order dated April 22, 2005, both plaintiffs were granted leave to amend their complaints to add first-party claims for breach of contract, UTPA violations, and West Virginia common law Hayseeds damages.  See Hayseeds, Inc. v. State Farm Fire & Casualty, 352 S.E.2d 73 (W.Va. 1986).  By the same order, plaintiff Weiland was granted leave to add a claim for defamation in violation of W.Va. Code § 33-11-4(3) and (5).

Defendant Liberty Mutual is a third-party carrier for the purposes of the complaints as they were initially filed, having insured Alice Motley, a former defendant in these actions. Plaintiffs say that they were injured when an unidentified "John Doe" driver forced plaintiff Weiland's vehicle, in which plaintiff Hall was a passenger, off the road and into a pile of logs stacked near the road and owned by Motley.[2]  (Weiland Compl. ¶¶ 7-9; Hall Compl. ¶¶ 8-10.)  Within four days of the accident,

---

[2]     Testimony was presented in the underlying case, however, that Earl Walls, who had cut the wood for Motley, gave the wood to Junior Collins, the stepfather of Weiland (Def. UTPA Mem. at 2), after Collins stopped at the roadside site and asked for it. (Dep. Tr. of Walls at 35-36, attached as Exh. 2 to Def. UTPA Mem.)  According to Walls, he helped Collins load one truck full of wood before Walls left the site, and he warned Collins not to leave any wood near the road.  (Id. at 36, 40.)  Collins denies having spoken to Walls or taken any logs from the site. (Dep. Tr. of Collins at 15, 23, attached as Exh. 4 to Def. UTPA Mem.)

3

on August 21, 2001, plaintiffs' counsel in the underlying actions forwarded to Motley letters requesting that she have her attorney or a representative of her homeowner's insurance company contact plaintiffs' counsel directly "with regard to injuries [that plaintiffs] sustained" in the accident.  (Correspondence of plaintiffs' counsel, attached as Exh. C to Pl. Mem.)

Defendant Liberty Mutual received the letters from Motley on September 24, 2001 (Def. UTPA Mem. at 3), and the correspondence was acknowledged on October 12, 2001, by a letter from Karen Marquis (Pl. Resp. Mem. at 2), a claims adjuster who initiated an investigation on behalf of Liberty Mutual (Def. UTPA Mem. at 3).  Ms. Marquis reviewed the accident report prepared by the county sheriff's department and spoke with Motley (claims diary at 1941-45, attached as Exh. 10 to Def. UTPA Mem.), but she did not speak with Weiland, Hall, the investigating police officer or emergency personnel who responded to the accident (Pl. Resp. Mem. at 2).  In the course of Marquis's probe, the following entry was made in the claim file:

> MARQUIS, KAREN, Liberty Mutual Employee,
> 12/12/2001
> Questionable claim - Clmt has past history of
> insurance fraud for which he was convicted
> and imprisoned.  Clmt apparently burned down
> his home (per insd). . . .

4

(Claims Diary at 1832, attached as Exh. F to Pl. Resp. Mem.)  The entry was followed shortly thereafter, on the same page, with the following:

> MARQUIS, KAREN, Liberty Mutual Employee,
> 01/03/2002
> Investigation into clmt's reported fraud
> conviction came back negative.  Fast Facts
> reports no misdemeanors or felony arrests
> and/or convictions registered in his name or
> social security number in the State of WV.

(Id.)  Upon the completion of Marquis's investigation, on January 3, 2002[3], Liberty Mutual denied the claims of Hall and Weiland on the grounds that Weiland "failed to maintain control of his vehicle causing the vehicle to leave the roadway and strike a stationary object."  (Correspondence of Karen Marquis, attached as Exh. 10 to Def. UTPA Mem.)

Two months later, on March 5, 2002, counsel for Hall and Weiland forwarded to Marquis a letter requesting reconsideration of the earlier denial based on the affidavit, submitted with their letter, of a fireman who responded to the accident.  (Def. UTPA Mem. at 4; Pl. Resp. Mem. at 3.)  According to the affidavit, "a view of the logs was obstructed due to the nature of the turn and the road so that the driver of the truck

---

[3]  Marquis's letter denying the claims is erroneously dated January 3, 2001.

could not have anticipated or been able to avoid striking the logs." (Affidavit of Delbert McKenzie, attached as Exh. 11 to Def. UTPA Mem.; attached as Exh. H to Pl. Resp. Mem.) Liberty Mutual employee Max Bellard of the special investigation unit assumed responsibility for further inquiry. (Pl. Resp. Mem. at 3.; Def. Mem. at 4.)

Bellard interviewed a number of witnesses (Pl. Resp. Mem. at 4; Def. UTPA Mem. at 4) and consulted with Liberty Mutual's outside counsel (Def. UTPA Mem. at 4). He did not, however, take a statement from Hall or Weiland at that time. (Pl. Resp. Mem. at 4.) Bellard wrote a letter to plaintiffs' counsel on June 21, 2002, stating that Liberty Mutual was first advised that Weiland had no comprehensive coverage of his own and that Weiland first provided estimates of property damage on June 6, 2002. (Correspondence attached as Exh. 12 to Def. UTPA Mem.) According to the letter, Liberty Mutual continued to contest liability on the grounds that the "John Doe" driver, who forced Weiland's vehicle off the road, would be liable for any damages incurred by the plaintiffs, or Weiland would be liable for failing to maintain control of the vehicle. (Id.) Bellard invited plaintiffs' counsel to submit additional information, but noted that Liberty Mutual assumed that Weiland did not intend to

6

pursue an action for personal injury because repeated requests
for documentation related to the personal injury claim had gone
unanswered.  (Id.)  He referenced Weiland's submitted damages
estimate of $1833.15, noting that the figure included "storage
fees" which likely had not been incurred by Weiland.  (Id.)
Nevertheless, Liberty Mutual, by Bellard, made an offer of
settlement in the amount of $1833.15, but asked that Weiland also
file a claim with his uninsured motorist carrier.  (Id.)

        Liberty Mutual and plaintiff Weiland entered into a
settlement agreement on August 7, 2002, whereunder Weiland
received $2500 in satisfaction of his property damage claim. (Pl.
Resp. Mem. at 4; Def. UTPA Mem. at 5; Def. Hayseeds Mem. at 3.)
The settlement check was accompanied by a letter from defense
counsel to plaintiffs' counsel asking that, "should [Weiland]
intend to pursue any personal injury claim arising out of the
subject accident please let [defense counsel] know."
(Correspondence attached as Exh. 3 to Def. Hayseeds Mem.)
Several months later, on December 3, 2002, and January 13, 2003,
plaintiffs' counsel forwarded demand letters for each Weiland and
Hall regarding their claims for personal injury.  (Pl. Resp. Mem.
at 4; Def. UTPA Mem. at 5; Def. Hayseeds Mem. at 3-4.)  The
demand letters were supplemented by each plaintiff's medical

7

bills and records.  (Id.)  It is undisputed that December 3, 2002, and January 13, 2003, are the first occasions that the bills and records were provided to defendant Liberty Mutual. (Plaintiffs' Answers to Def. Second Sets of Int., attached as Exhs. 5 and 7 to Def. Hayseeds Mem.)  Defendants further maintain that plaintiffs' counsel never provided an authorization for Liberty Mutual to obtain Hall's medical records, despite at least one request, on May 9, 2003, from defense counsel.  (Def. UTPA Mem. at 6; Correspondence of def. counsel attached as Exh. 18 to Def. UTPA Mem.)

Plaintiffs filed suit against Motley, Bellard, and Liberty Mutual in the Circuit Court of Kanawha County, West Virginia on July 31, 2003.  (Def. UTPA Mem. at 6; Def. Hayseeds Mem. at 4.)  The state court bifurcated the personal injury claims and the bad faith claims against Liberty Mutual and Bellard, and discovery proceeded only on the personal injury claims.  (Id.)  On January 2, 2004, claims adjuster Kristi Teklinski contacted plaintiffs' counsel with an offer to settle Hall's claim for $3000, explaining that Hall had suffered a compensable work-related injury in 1984, which the accident may have aggravated.  (Claims Diary at 1959, attached as Exh. 8 to Def. UTPA Mem.)  On February 6, 2004, Teklinski sent a letter to

plaintiffs' counsel advising that "[a]ttempts to reach [him] regarding this matter [had] been unsuccessful" and offering $13,748.00 to settle the claims of Weiland.  (Attached as Exh. 19 to Def. UTPA Mem.)  The personal injury claims were later settled, subsequent to an offer made by defendant Liberty Mutual on May 19, 2004, for payments of $16,000 to each plaintiff. (Def. UTPA Mem. at 6; Pl. Resp. Mem. at 6.)  Defendant Liberty Mutual contributed $25,000 of the total settlement proceeds, with the remainder being paid by the insurer of a third-party defendant.

II.

**A.   <u>The Summary Judgment Standard</u>**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue

9

of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing − "that is, pointing out to the district court − that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.   **The Unfair Trade Practices Act Claims**

1.

W.Va. Code § 33-11-1 et seq. provides a cause of action for unfair trade practices. In response to defendants' motion for summary judgment, plaintiffs aver that there is evidentiary support for Liberty Mutual's violation of the following subsections of that portion of the act found at W.Va. Code § 33-11-4(9) and labeled under the heading "unfair claim settlement practices":

      (a)   Misrepresenting pertinent facts or
            insurance policy provisions relating to
            coverages at issue;

      (b)   Failing to acknowledge and act
            reasonably promptly upon communications
            with respect to claims arising under
            insurance policies;

      (c)   Failing to adopt and implement reasonable
            standards for the prompt investigation of
            claims arising under insurance policies;

      (d)   Refusing to pay claims without
            conducting a reasonable investigation
            based upon all available information;
            . . .

      (f)   Not attempting in good faith to
            effectuate prompt, fair and equitable
            settlements of claims in which liability
            has become reasonably clear;

W.Va. Code § 33-11-4(9).

      Plaintiffs assert that provision (b) was violated in this case because defendant "did nothing to investigate Mr. Weiland's property damage claim between October of 2001 . . . and late November of 2001 . . . ."  But plaintiffs have produced no evidence of communications, written or otherwise, to which defendants did not promptly respond or act upon, and the statute very specifically applies to communications.  Moreover, defendants have cited portions of the claims diary showing that Marquis undertook a number of actions in October and November 2001, including her acknowledging the claim and requesting a copy of the accident report, upon receipt of which she arranged inspection of Weiland's vehicle.  (Def. UTPA Mem. at 3.)

It seems apparent, however, that there remain questions with regard to provisions (a), (c), (d), and (f) that are appropriate for jury determination.  With respect to (a), for example, plaintiffs complain that defendants never provided them notice of the availability of medical payments coverage.  (Pl. UTPA Resp. at 11-13.)  Though defendants respond that the existence of those benefits were disclosed to plaintiffs through discovery responses in the underlying action, there is no suggestion that plaintiffs were advised of their existence prior to litigation.  Plaintiffs did not file their complaints in state circuit court until nearly two years after the accident, and it appears that defendants may have withheld information about benefits to which plaintiffs might have been entitled.

Two of the remaining three provisions in question, (c) and (d), deal with the reasonableness and promptness of defendant's investigation and procedures, and the third, (f), instructs that prompt, fair and equitable settlements should be effected in good faith once liability has become reasonably clear.  "Liability is 'reasonably clear,' as stated in W.Va.Code, 33-11-4(9)(f), when a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that the defendant is liable to the plaintiff."  Syl. pt. 2, Jackson v. State Farm Mut. Auto. Ins. Co., 600 S.E.2d 346, 349 (W.Va. 2004). It is questionable whether liability ever became reasonably clear

13

under the circumstances, and it seems that defendant's valuation of the claim may have been hampered in some respects by the unavailability of a medical release for plaintiff Hall. Nevertheless, as plaintiffs correctly state, "[w]hether an insurer refused to pay a claim without conducting a reasonable investigation based on all available information under W.Va. Code, 33-11-4(9)(d), and whether liability is reasonably clear under W.Va.Code, 33-11-4(9)(f) ordinarily are questions of fact for the jury." Syl. pt. 4, <u>Jackson</u>, 600 S.E.2d 346, 349 (W.Va. 2004). As in <u>Jackson</u>, where the court found that "a reasonable jury could draw different conclusions on the issue" of whether the insured's liability was reasonably clear, the issues arising here under (d) and (f) are ones for the jury. <u>Id.</u> at 353. As to (c), Marquis testified that she reviewed the accident report and spoke to the insured about the claim, but testimony also was presented from another Liberty Mutual employee regarding numerous additional steps, not taken by Marquis, or even Bellard, which may be generally appropriate to investigations. (<u>See</u> Dep. Tr. of Kristi Teklinski at 26-28, attached as Exh. Y to Pl. Resp. UTPA Mem.) Plaintiffs should be allowed to go forward on matters related to defendants' investigation and their settlement offers under W.Va. Code §§ 33-11-4(9)(a), (c), (d) and (f), as to which defendants' motion for summary judgment is denied.

2.


Defendants also seek summary judgment on the claims of
Joseph Weiland brought under W.Va. Code §§ 33-11-4(3) and (5) of
the UTPA.  Subsection (3) provides:


> Defamation. – No person shall make, publish,
> disseminate or circulate, directly or
> indirectly, or aid, abet or encourage the
> making, publishing, disseminating or
> circulating of any oral or written statement
> or any pamphlet, circular, article or
> literature which is false, or maliciously
> critical of or derogatory to the financial
> condition of any person and which is
> calculated to injure the person.

Subsection (5) provides:

> False statements and entries. – (a) No person
> shall knowingly file with any supervisory or
> other public official, or knowingly make,
> publish, disseminate, circulate, or deliver
> to any person, or place before the public, or
> knowingly cause directly or indirectly, to be
> made, published, disseminated, circulated,
> delivered to any person, or placed before the
> public, any false material statement of fact
> as to the financial condition of a person.
> (b) No person shall knowingly make any false
> entry of a material fact in any book, report
> or statement of any person or knowingly omit
> to make a true entry of any material fact
> pertaining to the business of any person in
> any book, report or statement of such person.


Plaintiff Weiland acknowledges that the December 12,
2001, entry in Liberty Mutual's claims file reflects

15

documentation of "certain untrue rumors" about Weiland's possible
history of insurance fraud that were related to Marquis by
Motley.  (Pl. Resp. Mem. at 3.)  Indeed, when citing the language
in their memoranda, plaintiffs omit the second portion of the
entry, which reads, "Clmt apparently burned down his home <u>(per
insd)</u>. . . ."  (Emphasis supplied.)  Thus, though plaintiff
argues that "there is clearly a genuine question of fact
regarding whether Ms. Marquis did, in fact, have a good faith
basis for her unequivocal statement" (Pl. Resp. at 5), it appears
that Marquis simply was documenting information provided to her
by the insured, and the qualifying notation reflected as much.
Notably, the claims diary shows that within 22 days, on January
3, 2002, Marquis dispelled the incorrect information with a
notation directly above the December 12, 2001, entry.

     Plaintiff argues that <u>Mutafis v. Erie Insurance
Exchange</u>, 328 S.E.2d 675 (W.Va. 1985) is controlling.  The
<u>Mutafis</u> court held, in response to certified questions from this
court, that the defense of qualified privilege may be applied to
actions under W.Va. Code §§ 33-11-4(3) and (5), but that "[w]hen
it appears that a false material statement of fact critical of or
derogatory to the financial condition of a person was inserted
into a business file without any factual foundation whatsoever

16

and in willful and reckless disregard of its truth or falsity, the statement enjoys no privilege. . .”  Syl. pts. 3 and 4, <u>Mutafis</u>.  Mutafis filed suit against her automobile insurer after learning, through a newspaper article appearing in a local publication, that she was referenced in the file of a separate insured as “a relative and associated with mafia heavily, although may have NO connection whatever.”  <u>Mutafis</u>, 328 S.E.2d at 677.  She was not identified by name, but rather by claims file number, in the claim of the other insured, and court records containing her name were sealed in litigation involving the other insured’s claims.  <u>Id.</u>  Mutafis, however, “deduced” that the reference in the insurance file was made with regard to her.  <u>Id.</u>

<u>Mutafis</u> is critically distinct from this case in at least one respect: No adequate explanation was provided by the <u>Mutafis</u> defendants to show the basis for their documentation. The employee who made the offensive notation, Wayne LaQue, first testified that he was told about mafia connections by a subordinate claims adjuster, but LaQue later testified that he could not remember whether the underling employee supplied such information.  The adjuster denied making any such remark.  The state court noted that the district court judge had already determined that testimony of LaQue and the adjuster showed

17

"unequivocally" and "by their own admission" that there was no basis for the documentation.  As explained by the district judge:

> LaQue further testified that the statement relating to [p]laintiff's alleged involvement in the [m]afia was prompted by the "bad area" involved in the theft of [p]laintiff's car. When questioned what he meant by "bad area" LaQue stated that it related to the area of Clarksburg where the car was found after it had been stripped and burned.  A few minutes later, however, on redirect, the witness stated that "bad area" referred to the section in Clarksburg in which the plaintiff resided.  Upon further questioning LaQue then admitted that he did not know where in Clarksburg the [p]laintiff resided.

Id. at 627.

The state supreme court plainly dispelled any notion that "it was the intention of the legislature to so circumscribe necessary business communication as to establish absolute liability without fault."  Id. at 680.  In Mutafis, the allegation that the plaintiff was affiliated with the mafia appears to have been pulled out of thin air.  Here, however, the claims diary entry reflects that defendant was advised by its insured that Weiland had a criminal history involving insurance fraud and arson.  The plaintiffs recognize that this information was provided to defendants by Motley, the insured.  Malice, then, appears absent inasmuch as Marquis simply recorded information that could have proven important to defendant's evaluation of the

18

claim.  Moreover, the next entry in the claims diary memorializes
Marquis's determination that there was no evidence that Weiland
had engaged in criminal activity.  The second entry was made
relatively close in time to the first – approximately three weeks
later – and one cannot conclude that there has been a willful,
wanton, and reckless disregard of the truth.

        "A qualified privilege exists when a person publishes a
statement in good faith about a subject in which he has an
interest or duty and limits the publication of the statement to
those persons who have a legitimate interest in the subject
matter."  Swearingen v. Parkersburg Sentinel Co., 26 S.E.2d 209,
215 (W.Va. 1943).  See also, England v. Daily Gazette Co., 104
S.E.2d 306 (W.Va. 1958); Mauck v. City of Martinsburg, 280 S.E.2d
216 at 221 (W.Va. 1981).  However, a bad motive will defeat a
qualified privilege defense.  Dzinglski v. Weirton Steel Corp.,
445 S.E.2d 219, 221 (W.Va. 1994).  Plaintiff has not shown that
defendant had a bad motive for making the entry in Weiland's
claims file.  Rather, it appears only that Marquis made a note of
information that was provided to her from an outside source,
which information was corrected within the claims file when it
became clear that it was not supported by investigation.  There
also is no evidence that persons not involved with the

19

administration of plaintiffs' claims ever were made privy to the information.  The initial statement was recorded in good faith by an employee of defendant, who had a legitimate interest in the information provided by its insured.[4]  Under these facts, plaintiff's cause of action under W.Va. Code §§ 33-11-4(3) and (5) does not survive.

C.   <u>Medical Payments Coverage and The Hayseeds Claims</u>

Motley's policy of insurance provided up to $1000 per person in medical payments coverage, as follows:

> Coverage F – Medical Payments to Others
>
> We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an injury causing "bodily injury."  Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.  This coverage does not apply to [the insured] or regular residents of [the insured's] household except "residence employees."  As to others, this coverage applies only: . . .

---

[4]     Notably, it appears that Weiland was charged with the crime of arson in 1998, though not convicted.  (Dep. Tr. of Weiland at 9-10, attached as Exh. A to Pl. Mot. in Limine to Exclude Evidence of Criminal Charges.)

> 2. To a person off the "insured location"
>    if the "bodily injury":
>
>    a. Arises out of a condition of the
>       "insured location" or the ways
>       immediately adjoining; [or]
>    b. Is caused by the activities of an
>       "insured"; . . .

(Policy at 11, attached as Exh. A to Pl. Mem.)  Plaintiffs argue

that medical payments coverage never was offered to them (Pl.

Mem. at 5), and that they are first-party claimants with regard

to such coverage (Pl. Mem. at 9).  As first-party claimants, they

assert, they are entitled to damages for breach of the insurance

contract pursuant to <u>Hayseeds v. State Farm Fire and Casualty</u>

<u>Company</u>, 352 S.E.2d 73 (W.Va. 1986).  (Pl. Mem. at 9.)  Defendant

responds that <u>Hayseeds</u> provides a cause of action only for

policyholders.  (Def. <u>Hayseeds</u> Mem. at 6.)  Plaintiffs do not

argue that they are policyholders, but instead that they are "the

intended beneficiaries" of the medical payments coverage

provision.  (Pl. Resp. Mem. at 10.)

     The <u>Hayseeds</u> opinion appears to contemplate a remedy

only for those who have bargained for the benefits of their

policy.  The West Virginia Supreme Court of Appeals wrote:

> [W]e hold today that whenever a <u>policyholder</u>
> must sue his own insurance company over any
> property damage claim, and the <u>policyholder</u>
> substantially prevails in the action, the

> company is liable for the payment of the
> policyholder's reasonable attorneys' fees.
>
> . . .
>
> [W]e hold today that when a policyholder
> substantially prevails in a property damage
> suit against an insurer, the policyholder is
> entitled to damages for net economic loss
> caused by the delay in settlement, as well as
> an award for aggravation and inconvenience.
>
> . . .
>
> [P]unitive damages for failure to settle a
> property dispute shall not be awarded against
> an insurance company unless the policyholder
> can establish a high threshold of actual
> malice in the settlement process. . . .
> Unless the policyholder is able to introduce
> evidence of intentional injury – not
> negligence, lack of judgment, incompetence,
> or bureaucratic confusion – the issue of
> punitive damages should not be submitted to
> the jury.

Hayseeds, 352 S.E.2d 73 at 80-81 (emphasis supplied).

Plaintiffs further argue that they must be able to assert a Hayseeds claim because the policyholder could not do so under the provisions of the policy, and they therefore are the only first-party claimants to medical payments coverage.  (Pl. Resp. at 11-12.)  It does not follow that plaintiffs have the right of recovery simply because the policyholder may not. Rather, there must be some independent right to recovery. Plaintiffs attempt to show such a right exists under Miller v.

Fluharty, 500 S.E.2d 310 (W.Va. 1997), a case first cited by

defendants.  In that case, plaintiff, who was injured while a

passenger in a vehicle driven by a friend and owned by the

friend's mother, received $5000 medical payments coverage under

the vehicle owner's policy.  The coverage at issue before the

appellate court, however, was a separate "underinsured motorist

policy issued to plaintiff's family."  Miller, 500 S.E.2d at 314.

The plaintiff in Miller is described as the "policyholder."  Id.

Neither plaintiff here is the policyholder contemplated by

Hayseeds.


                              III.


          Approximately one week before filing their motions for

summary judgment, defendants also filed their motion to dismiss

plaintiffs' Hayseeds claims and motion to dismiss Joseph

Weiland's claim under W.Va. Code § 33-11-4(3) and (5).  Both were

designated under Fed R Civ P 12(b)(6), and defendants concede

that the motions may be untimely, but ask that the court consider

the motions filed under Fed R Civ P 12(c), as motions for

judgment on the pleadings. (Def. Reply Mems. at 1-2.)  Inasmuch

as the grounds offered by defendants in support of their motions

to dismiss are coextensive with the counterparts that were


                               23

submitted under Fed R Civ P 56(c), the motions to dismiss are
moot.


                                IV.


          For the reasons stated herein, it is ORDERED that
defendants' motion for summary judgment on plaintiffs' unfair
trade practices claims be, and it hereby is, denied as to W.Va.
Code §§ 33-11-4(9)(a), (c), (d) and (f), and otherwise granted;
defendants' motion for summary judgment on Joseph Weiland's claim
under W.Va. Code § 33-11-4(3) and (5) be, and it hereby is,
granted; and defendants' motion for summary judgment on
plaintiffs' Hayseeds claims be, and it hereby is, granted.  For
the reasons stated herein, it is further ORDERED that plaintiffs'
motion for partial summary judgment on their Hayseeds claims
related to defendant Liberty Mutual's failure to inform them of
the availability of medical payments coverage be, and it hereby
is, denied.

          It is further ORDERED that defendants' motion to
dismiss plaintiffs' Hayseeds claims and defendants' motion to
dismiss Joseph Weiland's claim under W.Va. Code § 33-11-4(3) and
(5) are dismissed as moot.


                                24

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: September 9, 2005

John T. Copenhaver, Jr.
United States District Judge